## LAKE v. SHUMATE.

1. L. purchased at public sale a tract of land for M., paid the greater part of the purchase-money, and took titles in his own name, M. giving to L. a note for such his payment, and himself paying the balance, under a verbal agreement that L. should convey to M. when this note was paid. Subsequently M., being in possession, mortgaged this land to D., which mortgage was duly recorded. L. died and his widow became sole owner of the legal title to the land, and also of M.'s note to her husband, and afterwards, regarding such title as her security, she made a loan to M. of money belonging to a ward of whom she was guardian. Some years later, M. gave to this widow a new note for the balance due to her upon his two notes so held by her, she never having had actual notice of the mortgage to D. In action by the widow to have D.'s mortgage canceled and for other relief, this land was sold. *Held,* that D.'s mortgage was not entitled to receive any part of the proceeds of sale until after full payment to L.'s widow of the moneys due to her on M.'s consolidated note.
2. The fact that the money lent by the widow belonged to her as guardian, while the original debt was due to her individually, does not affect her rights in the matter.
3. In a contest between M. and L., M. could not demand titles without paying all of his indebtedness to L.; and D., under his mortgage of M.'s interest in the land, can claim only such interest—and that is, what remains after paying to the heir of L. the balance of the purchase-money and all other debts due to her by M.
4. If actual notice of the mortgage to D. was had before other money was lent to M. by L. or his widow, the mortgage would be preferred to such subsequent loans, but neither possession of the premises by M., nor the record of the mortgage, were sufficient to charge the holder of the legal title with notice.
5. Costs in such a case are within the discretion of the Circuit judge.

Before COTHRAN, J., Greenville, November, 1882.

The appeal in this cause came to this court under the title of Mary P. Lake against W. T. Shumate, administrator of J. P. Moore, deceased, T. C. Gower, J. N. Greer, W. A. Williams and Samuel J. Douthit, judge of Probate for Greenville county. The action was commenced in the life-time of J. P. Moore, not later than April, 1879. The complaint stated the facts of the case and prayed judgment "that the cloud upon her title be removed, that

the mortgage to the defendant Douthit be marked satisfied, and that she may have such other and further relief as the nature of the circumstances of the case may require, and to the court shall seem wise and just."

Answers were filed by Moore, Douthit, Williams and Greer, and the last three asked for a sale of the land, the subject-matter of the action. It was sold in the fall of 1879, under a decretal order of Judge Fraser—for how much does not appear. The facts which gave rise to this controversy are stated in the opinion of this court.

The decree of the Circuit judge, omitting its statement, was as follows:

Assuming that Moore had the right to give the mortgage in question to the Probate judge, and that the latter had the right to take the same as a valid and legal security (for without such assumption there is no case presented here), the question for consideration and determination now may be thus stated: Has the plaintiff here paramount right to be paid that portion of her debt for money advanced to Moore after the execution of the mortgage to the Probate judge; or is she to be limited to the sum with interest, which was advanced by Dr. Lake for Moore, with a claim as to the balance subordinate to the rights of the mortgagee? There is not enough to satisfy both.

The case was argued by the plaintiff's counsel as one of tacking, but I have no hesitation in saying that that iniquitous doctrine does not prevail in this State or in this country, where, in the language of Chancellor Kent, " by the operation of the registration laws, it has been torn up by the roots." If, therefore, the plaintiff is entitled to the whole of her demand, her right to it must rest upon other ground than this.

It cannot be denied that if the mortgage were out of the way, and Moore were here asserting his right to specific performance, he would be required to do equity by paying up the whole amount due by him before the court would enforce such right. Did his mortgage to the Probate judge convey anything except the right which he had to have the contract with Dr. Lake

specifically performed? That was all the interest that he had in the subject-matter, and it was all he could transfer to another.

Assuming that Moore had a mortgageable interest in the lot, (see. *Witte* v. *Wolfe*, 16 *S. C.* 256,) it must follow that the recording of such mortgage would be all that the law requires to affect any one who afterwards should take a mortgage of the same estate. But it by no means follows that the plaintiff here, who already had the legal estate, can be affected by such notice. This the law calls constructive notice, and it differs very essentially from that other kind of notice which gives actual knowledge and thereby affects the conscience. This actual knowledge the plaintiff, it appears, did not have, and in the absence of it, in good faith relying upon the legal title, she should be protected and secured. Nor was she bound to look down the line from the point of her legal title for subsequent incumbrances. Nothing short of actual knowledge of such could affect her—constructive notice was not sufficient. See *National Bank of Chester* v. *Gunhouse,* 17 *S. C.* 489.

This position derives valuable support from the analogous and well established principle of a release of his lien upon a portion of the premises by a senior mortgagee with actual knowledge of the existence of a second mortgage upon the premises. In such case the senior mortgagee must abate a proportionate part of his debt. But the mere record of such second mortgage does not affect the first mortgagee. See *Jones Mort.,* § 562. "It would not be reasonable to subject the mortgagee to the constant necessity of investigating transactions between the mortgagor and third persons subsequent to the mortgage." Continuing, the same author says: "A subsequent purchaser takes his title with full knowledge of the mortgage, and if he wishes to protect himself he should notify the mortgagee of his purchase. The record is constructive notice only to subsequent or those claiming under the same grantor." *Ibid.,* § 723. And this is the case of mortgages pure and simple. Surely the holder of the legal title, as in the case at bar, could not be placed in worse condition.

It is true, as contended for by the defendants, that Dr. Lake's title from Dr. Furman, although absolute in its terms, must be construed to be only a mortgage in fact. But it must be con-

strued by the court to be so, for in its terms it is not a mortgage,. but an absolute deed, and. in putting 'upon it the construction demanded, the court would be derelict in duty if it failed or refused to take into consideration all the facts and circumstances. of the case; and conspicuous amongst these are (1) the security which ought always to attach to the possession of the legal title; (2) the further loans of money upon the faith of it, and (3) the ignorance of the actual existence of the intervening mortgage to the Probate judge.

Wherefore it is ordered and adjudged and decreed, that the plaintiff, Mary P. Lake, is entitled to have judgment in full of her demands against the defendant, James P. Moore, as ascer-- tained and set down by the master in his report, from the pro-- ceeds of the sale of the lot in question.

Let the plaintiff have judgment against the defendants for her costs and disbursements.

From this decree the defendants appealed upon the follow- ing exceptions (omitting the first, which is immaterial):

2. "Because the Circuit judge erred in holding that the plaintiff was entitled to the full amount of the $4,000 note, the master having found that there was no agreement between the late J. P. Moore and Mrs. Lake, when the $1,300 was loaned him by her as guardian, that the house and lot should stand as security for that amount in addition to the other note.. The decree should have been for the amount due on the $2,200 note, then for the amount due the defendant Douthit and then for the $1,300 note to plaintiff.

3. "Because the Circuit judge erred in holding that the plaintiff, Mrs. Lake, was not affected with notice by the re- cording of the mortgage from J. P. Moore to the defendant Douthit, Probate judge.

4. "Because the Circuit judge erred in holding that the defendant Douthit occupied the same position that J. P. Moore did, by the taking of the mortgage, and that before he could have. had a specific performance from Dr. Lake, he (Douthit) would have been required to pay off both of these notes.

5. "Because the Circuit judge erred in decreeing that the

plaintiff was entitled to the whole amount due on the two notes, when it appears from the testimony that the mortgage executed to Douthit was before the second loan was made, which second loan was by her in a different right, to wit: as guardian of her minor son, T. E. Lake.

6. " Because the defendant, Moore, being in possession of the house and lot in question, exercising acts of ownership over the same, paying no rents and paying the taxes on the same, which facts being well known to the plaintiff and being sufficient in law to put her on the inquiry, she is estopped from disclaiming actual knowledge of the Douthit mortgage, or other equities prior to the second loan. The Circuit judge erred in holding that actual knowledge was necessary to bind her.

7. " Because the Circuit judge, having held that ' Dr. Lake's title from Dr. Furman, although absolute in its terms, must be construed to be only a mortgage in fact,' and having admitted that the plaintiff occupied no higher position in this matter than Dr. Lake, erred in holding that defendant Douthit's mortgage was postponed until the second advance of money made by the plaintiff to Moore was paid.

8. " Because the Circuit judge, having held that the title from Dr. Furman to Dr. Lake was nothing more than a mortgage, then on the principle ' Once a mortgage always a mortgage' the claim should have been decreed to be paid according to their respective priorities.

9. " Because this being an equity proceeding, and the lands having been ordered sold upon the suggestion of the answers of the defendants, the Circuit judge should have provided for the costs to be paid out of the funds in the hands of the court and not by the defendants personally."

*Messrs. T. Q. Donaldson* and *M. F. Ansel,* for appellant, cited 1 *Jones Mort.,* §§ 162, 181, 241, 255, 331, 591, 600, 676, 732, 1081; 2 *Sumn.* 533; 1 *McMull. Eq.* 1; *Pom. Eq. Jur.,* §§ 747, 749; 2 *Lead. Cas. Eq. (3d Am. Ed.)* 160, 165, 182; *Ad. Eq.* 354; 2 *Hill Ch.* 421; 28 *Iowa* 413; 17 *Ves.* 227; 20 *Beav.* 586; 2 *Ves. & B.* 79–84; 11 *Rich.* 697; *Frederick* v. *Corcoran,*

100 *Pa. St.;* 10 *S. C.* 461 ; 4 *Des.* 256 ; 1 *Johns. Ch.* 566 ; 2 *Id.* 158 ; 5 *Id.* 29 ; 2 *Paige* 300 ; 13 *Ves.* 120.

*Messrs. Earle & Wells,* and *Geo. Westmoreland,* contra, cited *Pom. Eq. Jur.,* §§ 385, 658 ; 1 *Strobh. Eq.* 356 ; *Jones Mort.,* §§ 172, 331, 372, 562, 723 ; 8 *Paige* 361 ; 3 *Stock. Ch.* 246 ; 1 *Johns. Ch.* 566 ; 46 *N. Y.* 496 ; 13 *Ill.* 186 ; 4 *Greene* (*Iowa*) 34 ; 13 *Iowa* 467 ; 5 *Myl. & C.* 303 ; 2 *Lead. Cas. Eq., Part II., p.* 418 ; 2 *S. C.* 122 ; 7 *Ves.* 265 ; 1 *Story Eq. Jur.,* § 776 ; 16 *S. C.* 256 ; *Wade Not.,* §§ 96, 205.

September 24th, 1883.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The facts of this case, as gathered from the decree of the Circuit judge, are substantially as follows : On January 4th, 1870, the late Dr. Lake, the husband of the plaintiff, through his nephew, James P. Moore, bought, at public sale, the tract of land over the proceeds of sale of which the present controversy arises, and titles were duly made to him.   Five hundred dollars of the purchase-money was paid at the time by Moore, and the balance, amounting to something over $2,000, was paid by Lake.   The purchase was, in fact, made for Moore, who went into possession under an agreement with Dr. Lake, that titles were to be made to Moore when he refunded the amount paid by Dr. Lake, for which amount Moore gave his note to Dr. Lake.   Moore made valuable improvements on the land, and continued in possession until the same was sold under an order in this cause.   Moore having died pending the action, the same was continued against his administrator, as we suppose, though that fact does not appear in the " Case."

On September 16th, 1871, Moore became the guardian of his co-defendant, Williams, gave bond as such to the Probate judge, Douthit, with defendant Gower as his surety ; and also gave a mortgage of the said land as additional security to the Probate judge, Douthit, which was duly recorded.   Soon afterwards, the Probate judge, either doubting his right to take that kind of security, or learning that Moore did not hold the legal title to the premises mortgaged, required additional personal security,

whereupon the defendant Greer signed the bond as an additional surety.

In September, 1872, Dr. Lake died intestate; and in the same month, the plaintiff and the heirs of Dr. Lake, all being *sui juris*, entered into an agreement by which the latter conveyed to the former all their interest in the land in question. In the settlement of Dr. Lake's estate, on May 12th, 1873, the note of Moore to Dr. Lake above referred to, then amounting to something over $2,000, was assigned to the plaintiff as part of her share of her husband's estate. On October 13th, 1874, the plaintiff, as guardian of one T. E. Lake, loaned to Moore other moneys amounting to $1,300; and afterwards, on August 7th, 1877, the balance due on these two notes was consolidated, and a new note given by Moore to the plaintiff, individually, for something over $4,000.

These transactions between Moore and the plaintiff were, as she says, based upon the security she felt in the possession of the legal title to the land, and were made without any actual notice of the existence of the mortgage to Douthit, which, however, was duly recorded in the proper office. Although the plaintiff made the subsequent loan to Moore upon the faith of the security she felt in the possession of the legal title to the land, there was no evidence of any special agreement between her and Moore that the land should stand as security for such further loan.

It was conceded that so much of the note held by the plaintiff, as represented the balance due on the note originally given by Moore to Dr. Lake, should be first paid out of the proceeds of the sale of the land; and the only controversy was whether the balance of the note now held by plaintiff, representing the amount due on the loan made by plaintiff to Moore, after the execution of the mortgage to Douthit as Probate judge, was entitled to priority over said mortgage. The Circuit judge held that such balance was entitled to priority over said mortgage, and from his decree defendants appeal.

We concur with the Circuit judge in the conclusion which he has reached. We are unable to see how the fact that the loan made by the plaintiff to Moore was originally made in her

capacity as guardian of T. E. Lake, can affect the question. She was responsible to her ward for the money loaned, and was legally entitled to enforce payment of the same. It was not the case of a chose in action belonging to her ward, assigned by her to Moore, but it was money in her hands which it was her duty to invest, and which she had a right to call in whenever she thought proper so to do. More than this, she did call in the investment of her ward's funds, and took a new note payable to herself individually, and it is upon this new note, and not upon the one payable to herself as guardian, that she now bases her claim. If the note now held by her does, in fact, represent funds of her ward, he may have an equity to pursue the same. But for aught we know he may have been settled with by plaintiff, and if so, then she would be equitably as well as legally entitled to the note. At all events, we do not see what concern either Moore or his mortgagee had in the matter.

There is no doubt that, under the facts proved, Moore would be entitled to demand from the plaintiff specific performance of the agreement between himself and Dr. Lake. But when he invoked the aid of a court of equity for that purpose, that court would require him to do equity by paying, not only the balance due on the purchase-money, but also any other indebtedness which he may have incurred to Dr. Lake, or to the plaintiff who stands in his shoes. *Walling* v. *Aiken, McMull. Eq.* 1 ; *Secrest* v. *McKenna,* 1 *Strobh. Eq.* 356. Hence, if the contest here was between the plaintiff and Moore, there is no doubt but that the plaintiff would be entitled to payment of the whole amount of her demands.

But it is contended that the result must be different when the contest is between the plaintiff and Douthit, as mortgagee of Moore. Although Moore never held the legal title, and was entitled only to an equitable estate, yet, under the authorities, (*Roddy* v. *Elam,* 12 *Rich. Eq.* 343 ; *Witte* v. *Wolfe,* 16 *S. C.* 256,) such an estate can be made the subject of a mortgage. Assuming, then, for the purposes of this case, that the Probate judge had a right to take this kind of security, and that the Douthit mortgage is a valid one, the inquiry next presented is whether the mortgagee of Moore stands in any better position

than he does. The mortgage to Douthit did not operate as a transfer of Moore's estate in land, but it only impressed a lien upon such estate which could only be enforced to the extent of Moore's interest, which, as we have seen, was only what might remain after paying, not only the balance due on the purchase-money, but also any other debts that might be due by him to the holder of the legal title. Douthit cannot claim as assignee of Moore; his only claim is to enforce his lien upon Moore's interest, whatever that may be.

If, however, the plaintiff had loaned money to Moore after notice of his mortgage to Douthit, then, upon a plain, equitable principle, such loan would be postponed to the lien of such mortgage, as otherwise a fraud might be practiced upon Douthit in which the plaintiff, having notice, would be a participant. But in the absence of notice, which it would have been very easy for Douthit to have given, we see no reason why the case should be taken out of the operation of the general rule. The plaintiff as owner of the legal title loaned her money upon the faith of the security which she thus held, and it would be inequitable now to deprive her of such security or postpone it to a lien of which she had no notice.

Our next inquiry then is, Did the plaintiff, at the time she loaned her money to Moore, have notice of the lien of the Douthit mortgage? It is conceded that she had no actual notice, but the appellants contend that she had constructive notice, first, by the fact that Moore was in possession; second, by the record of the Douthit mortgage. It is quite true that when one purchases land of which a person, other than the vendor, is in possession, such possession is notice to him. But notice of what? Why simply, that the party so in possession may have some claim which he had better inquire into. Moore's possession, therefore, was only notice to the world that he had some kind of claim to the land, which, upon proper inquiry, would have been found to be a claim of a person in possession under a contract to purchase, with the right to enforce specific performance upon payment of the balance due by him. But how his possession could be regarded as notice of the Douthit mortgage we are unable to conceive.

Next, as to the notice which is claimed to be derived from the recording of the Douthit mortgage. This of course would only be constructive notice, and the question, therefore, is narrowed down to the inquiry whether constructive notice, derived from the recording of the Douthit mortgage, would be sufficient in a case of this kind. No case directly in point has been cited nor have we been able to find one, but, reasoning from analogous cases, we are satisfied that mere recording is not sufficient notice in a case of this kind. In addition to the analogy mentioned by the Circuit judge in his decree, derived from the rule in regard to the release of the lien of a mortgage upon a portion of the mortgaged premises without actual notice of a junior mortgage, as laid down in 1 *Jones Mort.*, § 562, we may mention another analogy drawn from the rule in regard to a mortgage to secure future advances, as laid down in 1 *Jones Mort.*, § 372. According to that rule a mortgagee under such a mortgage is not affected with notice by the record of a junior mortgage, and he may with safety continue to make advances subsequent to the recording of such second mortgage which will be protected by the lien of his mortgage. But any advance made after actual notice of such second mortgage will not be so protected.

Indeed, the rule as laid down in *Jones Mort.*, §§ 557, 558, 562 and 723, seems to be that recording is only notice to subsequent purchasers and creditors, and that as to a prior mortgagee it is not even constructive notice. As is said in section 723, "A subsequent purchaser takes his title with full knowledge of the mortgage, and if he wishes to protect himself he should notify the mortgagee of his purchase. The record is constructive notice only to subsequent purchasers, or those claiming under the same grantor." The same rule would of course apply to a subsequent creditor secured by a mortgage. According to these authorities the recording of the Douthit mortgage did not operate even as constructive notice to the plaintiff. As the Circuit judge has well said, if these rules apply to the case of a formal legal mortgage, with how much more force should they apply in a case like this, where a legal title is construed to operate as a mortgage!

The authorities cited by the appellants to show that, in the

absence of any express or implied agreement between the parties, the lien of a mortgage cannot be extended so as to cover indebtedness other than that intended to be secured by the mortgage, apply only to legal and formal mortgages, and not to a case like this where the court is asked to construe a strictly legal title as a mortgage. In such a case, the rule, as we have seen, is that when the court is asked to decree specific performance, or that the mortgagor, so called, may be allowed to redeem, the vendee will be required to pay not only the balance due on the purchase-money, but also any other debts which he may owe the vendor. *Walling* v. *Aiken*; *Secrest* v. *McKenna, supra.* In fact the transaction may be regarded, in equity, as a mortgage to secure not only the balance of the purchase-money, but also all future advances, and the rule, as we have seen, in such a case is, that nothing but actual notice of a subsequent incumbrance will be sufficient to postpone the lien for such advances to the lien of such subsequent incumbrance.

So, too, the remark made by Chancellor Harper, in *Walling* v. *Aiken*, relied on by the appellants, that the rule requiring a mortgagor coming to redeem to pay not only the mortgage debt, but also all that he might owe the mortgagee, did not apply when an assignee or creditor of the mortgagor brought his bill to redeem, was manifestly made in reference to a case involving a purely formal mortgage, and was not intended to apply to a case like this, for he immediately afterwards proceeded to draw a marked distinction between the two cases, and held that while a tender by the mortgagor at the day appointed of the amount of the mortgage debt would have the effect of revesting the legal title in the mortgagor, thereby rendering it unnecessary for him to invoke the aid of the Court of Equity, yet it could have no such effect in a case like that then before the court, and that, therefore, notwithstanding the tender had been made at the day appointed for the payment of the debt, the mortgagor, so called, must pay all that he owed.

In addition to this, it must be remembered that the remark of the distinguished chancellor, so much relied upon by the appellants, was made in a case in which the rights of assignees or

creditors were not involved, and was, therefore, a mere passing observation. Whether the question of notice would not be a material and necessary inquiry is not stated or even alluded to, as it need not have been, inasmuch as the case then under con-sideration did not call for any careful statement of the rule with its necessary qualifications.

We do not desire to be understood as intimating any opinion upon the question whether a mortgagor, under a strictly formal mortgage of real estate, who is in possession of the mortgaged premises, is bound, when he brings his bill to redeem, to pay not only the mortgage debt, but also any other debt which he may owe the mortgagee. That question is not involved in the present controversy and has not been discussed, and is not intended to be decided.

In cases of this kind the question of costs is a matter addressed to the discretion of the Circuit Court, and we see no reason for interfering with the matter.

The judgment of this court is that the judgment of the Cir-cuit Court be affirmed.